Dear Senator Long,
¶ 0 This office has received your request for an Opinion addressing, in effect, the following question:
Can a municipally-owned fire or ambulance service whichreceives operating funds from taxpayer dollars charge residentsof the municipality for services?
¶ 1 The gist of your concern is whether citizens whose taxes help support an ambulance or fire service can nevertheless be charged a fee when they require the use of that service.
 I. POWERS OF MUNICIPALITIES
A. Charter Municipalities
¶ 2 A city with "more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State." Okla. Const. art. XVIII, § 3(a). Provisions of such a charter when "not inconsistent with the Constitution supersede state statutes pertaining to municipal affairs and become the superior law in matters pertaining to purely municipal matters." OklahomaJournal Publishing Company v. City of Oklahoma City,620 P.2d 452, 453 (Okla.Ct.App. 1980) (citation omitted); see 11 O.S.1991, § 13-109[11-13-109].
¶ 3 A charter municipality "is accorded full power of local self-government, and as such the city has the power to enact and enforce ordinances to protect the public peace, order, health, morals and safety of its inhabitants." Moore v. City of Tulsa,561 P.2d 961, 963 (Okla. 1977).
B. Non-Charter Municipalities
¶ 4 Non-chartered cities are governed by the Municipal Code found in Title 11 of the Oklahoma Statutes. The general powers of municipal corporations are set out in 11 O.S. 1991, § 22-101[11-22-101].
They include the power to:
 Make all contracts and do all other acts in relation to the property and affairs of the municipality, necessary to the good government of the municipality, and to the exercise of its corporate and administrative powers[.]
11 O.S. 1991, § 22-101[11-22-101](4).
¶ 5 This is a fairly broad provision allowing municipalities to do that which is necessary to the good government of the municipality. Nevertheless, it is not unlimited.
 A municipal corporation possesses and can exercise only those powers granted in express words, those necessarily or fairly implied or incidental to the powers expressly granted, and those essential to the declared objects and purposes of the corporation.
Development Industries v. City of Norman, 412 P.2d 953, 956
(Okla. 1966) (citation omitted).
C. Operation of Fire and Ambulance Services
¶ 6 The Oklahoma Constitution specifically grants every municipal corporation "the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation." Okla. Const. art. XVIII, § 6.
¶ 7 A similar statutory provision not only grants the right to engage in such business or enterprise but further gives the municipality the right to "do all things necessary and proper in the discretion of the governing body of the municipality pursuant to the authority granted to it by the Constitution and laws of this state to maintain said business or enterprise for the benefit of the municipality." 11 O.S. 1991, § 22-104[11-22-104](1).
¶ 8 The statutes in the Municipal Code governing fire departments are found in 11 O.S. 1991 and Supp. 1995, §§ 29-101
to 29-205. Municipalities are specifically authorized to provide fire protection in a variety of ways:
 1. Provide protection from fire for all persons and property within its boundaries;
 2. Contract to give or receive such protection to or from one or more municipalities or private organizations;
 3. Provide fire protection jointly with one or more municipalities or private organizations;
 4. Contribute toward the support of any fire department in return for fire protection service;
 5. Create fire protection districts within the limits of the municipality encompassing areas served by fire protection services; or
 6. Provide fire protection for persons and property outside its corporate limits provided that said fire protection has been authorized by the governing body of the municipality.
11 O.S.Supp. 1995, § 29-105[11-29-105].
¶ 9 Section 29-101 states, in pertinent part, as follows:
 The governing body may enact such ordinances, resolutions and regulations as may be necessary to establish and operate a fire department. . . .
11 O.S. 1991, § 29-101[11-29-101].
¶ 10 Municipalities historically, even prior to statehood, have provided fire protection to their citizens. Okla. [Terr.] Stat. 1890, ch. 15, §§ 609, 686.
¶ 11 The operation of ambulance service by municipalities is clearly contemplated by the Oklahoma Emergency Medical Services Act, 63 O.S. 1991 and Supp. 1995, §§ 1-2501 to 1-2516. In fact, municipalities are authorized by that Act to "regulate and control, pursuant to duly enacted ordinance or regulation, Ambulance Service transports originating within the jurisdiction of such . . . municipalities." 63 O.S.Supp. 1995, § 1-2515[63-1-2515](A). The Act contemplates that governmental entities, such as municipalities, will operate ambulance services in stating that "[n]o person, company, governmental entity or trust authority may operate an ambulance service within this state except as provided [in the Oklahoma Emergency Medical Services Act]. 63 O.S. 1991,§ 1-2509[63-1-2509](A).
¶ 12 It appears, then, that municipalities, whether charter or non-charter, have the authority to operate fire and ambulance services. We next consider the question of whether they can charge for the use of those services.
 II. FEES FOR SERVICES
¶ 13 The Oklahoma Constitution provides that a municipal corporation engaging in a business or enterprise has the power to regulate the charges for public services. Article XVIII, § 6, as noted above, authorizes a municipality to engage in any business or enterprise which could be engaged in by another entity through a franchise with the municipality. Article XVIII, § 7 goes on to prohibit the surrender of power to regulate charges for publicservices.
¶ 14 Citizens are accustomed to paying municipal fees for a variety of services, including electricity, sewer, water and garbage disposal. The Oklahoma Supreme Court specifically addressed the issue of fees in the context of powers granted to municipalities to engage in a business or enterprise in Sharp v.Hall, 181 P.2d 972 (Okla. 1947), stating:
 The city could make a charge for the use of the municipal sewer system under the authority granted by the constitution where the same was not arbitrary, discriminatory or unreasonable. . . .
Sharp at 975.
¶ 15 The power to engage in business is not self-executing but must be construed in conjunction with Article X, § 27 of the Oklahoma Constitution, which authorizes the manner of indebtedness for public utilities. Zachary v. City of Wagoner,292 P. 345 (Okla. 1930). There are numerous cases defining public utilities under Article X, § 27.[1] A public utility within the meaning of Article X, § 27 is "some utility owned exclusively by the municipality" and "devoted generally to the public use."Town of Afton v. Gill, 156 P. 658, 659 (Okla. 1916).
¶ 16 In the previously mentioned Sharp case, which authorized a charge for the use of a municipal sewer system, the Court used the following rationale:
 It would be a strained and far-fetched interpretation to say that a municipality can exceed the debt limit to purchase and install a sewer system because it is a "public utility" and in the next breath say that no charge can be made for its use because it is not a "business enterprise".
Sharp, 181 P.2d at 974.
¶ 17 The Court in Sharp quotes with approval from the Supreme Court of Alabama:
 Such charges assessed for the use of the sewer system cannot be construed as a general tax. They are charges for special benefits received by certain persons residing in the city, but not enjoyed by all.
Id. (citation omitted).
¶ 18 Fire departments have been defined as public utilities.Town of Nichols Hills v. Williamson, 323 P.2d 733 (Okla. 1958). There is no reason to believe that an ambulance service, if owned exclusively by the city and devoted to public use as described inGill, would not also constitute a public utility. Thus, under the holding of Sharp, the municipality could charge a fee for the use of either, provided the fee was not arbitrary, discriminatory or unreasonable.
 CONCLUSION
¶ 19 Municipalities have the express power to operate a fire department. 11 O.S. 1991 and Supp. 1995, §§ 29-101 to 29-205. They have implied power to establish a municipally-owned and operated ambulance service. See A.G. Opin. 84-84, Okla. Const. art. XVIII, § 6, 11 O.S. 1991, § 22-104[11-22-104]. Municipalities have the authority to charge a fee for the use of a public utility.Sharp v. Hall, 181 P.2d 972 (Okla. 1947). The Oklahoma Supreme Court has held a municipal fire department to be a public utility, Town of Nichols Hills v. Williamson, 323 P.2d at 734, and we find a municipally-owned ambulance service to be a public utility as well, see Town of Afton v. Gill, 156 P. at 659.
¶ 20 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Under the powers granted by the Oklahoma Constitution atArticle XVIII, § 6 and by the statutes at 11 O.S. 1991, §22-104[11-22-104], a municipally-owned fire or ambulance service whichreceives operating funds from taxpayer dollars can chargeresidents of the municipality for services so long as the chargesare not arbitrary, discriminatory or unreasonable.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GAY ABSTON TUDOR ASSISTANT ATTORNEY GENERAL
[1] The following have been found to be public utilities:
 convention halls, State v. Barnes, 97 P. 997 (Okla. 1908); public parks, City of Ardmore v. State, 104 P. 913 (Okla. 1909); cemeteries, Denton v. City of Sapulpa, 189 P. 532 (Okla. 1920); "electric light" (power) plants, Williams v. City of Norman, 205 P. 144 (Okla. 1922); municipal airports, Price v. Storms, 130 P.2d 523 (Okla. 1942); sewers, Chastain v. Oklahoma City, 258 P.2d 635 (Okla. 1953); museums and artifacts, City of Tulsa v. Williamson, 276 P.2d 209 (Okla. 1954); public libraries, Bekins v. City of Tulsa, 299 P.2d 792 (Okla. 1956); fire departments, Town of Nichols Hills v. Williamson, 323 P.2d 733 (Okla. 1958); parking lots, City of Shawnee v. Williamson, 338 P.2d 355 (Okla. 1959).